# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

MARGARET KATHLEEN STEVENSON,    )
    )
      Plaintiff,    )
    )    **Civil Action No. 3:12-cv-00462**
    v.    )    **Judge Nixon / Knowles**
    )
CAROLYN W. COLVIN,    )
**Acting Commissioner of Social Security,**[1]    )
    )
      Defendant.    )

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain

judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff

was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental

Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended.

The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record.

Docket No. 14.  Defendant has filed a Response, arguing that the decision of the Commissioner

was supported by substantial evidence and should be affirmed.  Docket No. 16.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for

Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin should therefore be substituted for Commissioner Michael J. Astrue as the Defendant in this action. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

be AFFIRMED.

# I.  INTRODUCTION

Plaintiff filed her applications for DIB and SSI on December 8, 2008, alleging that she had been disabled since October 1, 2008, due to illiteracy, depression, bipolar disorder, anxiety, and "psychotic features."  Docket No. 12, Attachment ("TR"), TR 128, 136, 237.  Plaintiff's applications were denied both initially (TR 81, 82) and upon reconsideration (TR 84, 86). Plaintiff subsequently requested (TR 106) and received (TR 109) a hearing.  Plaintiff's hearing was conducted on September 28, 2010, by Administrative Law Judge ("ALJ") Ronald Miller. TR 28.  Plaintiff and vocational expert ("VE"), Pedro Roman, appeared and testified.  *Id.*

On October 8, 2010, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 15-27.  Specifically, the ALJ made the following findings of fact:

> 1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2011.
>
> 2.  The claimant has not engaged in substantial gainful activity since October 1, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3.  The claimant has the following severe impairments: asthma, chronic obstructive pulmonary disease (COPD), status post colon cancer, anxiety and affective mood disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5.  After careful consideration of the entire record, the

undersigned finds the claimant has the residual functional capacity to perform any exertional level of work activity except for: needs to avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation; needs work that does not require reading and writing; she is able to understand and remember simple and detailed tasks; she is able, with some difficulty, to maintain attention, concentration, persistence and pace; she is able to be around others without distraction; she is unable to interact appropriately with the general public; and she is able, with some difficulty, to adapt to changes in the work environment.

6.     The claimant is capable of performing all past relevant work.  This work does not require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.     The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2008, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

TR 17-27.

On October 19, 2010, Plaintiff timely filed a request for review of the hearing decision. TR 9.  On April 19, 2012, the Appeals Council issued a letter declining to review the case (TR 1-5), thereby rendering the decision of the ALJ the final decision of the Commissioner.   This civil action was thereafter timely filed, and the Court has jurisdiction.  42 U.S.C. § 405(g).  If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive.  *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record.  Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

# III. CONCLUSIONS OF LAW

## A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

(1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

(2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the

"listed" impairments[2] or its equivalent.  If a listing is met or
equaled, benefits are owing without further inquiry.

(4)  If the claimant does not suffer from any listing-level
impairments, it must be determined whether the claimant can
return to the job he or she previously held in light of his or her
residual functional capacity (e.g., what the claimant can still do
despite his or her limitations).  By showing a medical condition
that prevents him or her from returning to such past relevant work,
the claimant establishes a *prima facie* case of disability.

(5)  Once the claimant establishes a *prima facie* case of disability,
the burden shifts to the Commissioner to establish the claimant's
ability to work by proving the existence of a significant number of
jobs in the national economy which the claimant could perform,
given his or her age, experience, education, and residual functional
capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175,

1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by

relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the

claimant is not significantly limited by a nonexertional impairment, and then only when the

claimant's characteristics identically match the characteristics of the applicable grid rule.

Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability

determination.  *Id.*  In such cases where the grid does not direct a conclusion as to the claimant's

disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with

particularized proof of the claimant's individual vocational qualifications to perform specific

jobs, which is typically obtained through vocational expert testimony.  *See Varley v. Secretary*,

820 F.2d 777, 779 (6th Cir. 1987).

---

[2] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

## C. Plaintiff's Statement Of Errors

Plaintiff contends: (1) "The decision reflects a significant inconsistency between the ALJ's finding as to the severity of [Plaintiff's] physical impairments and his discussion of those same impairments"; (2) the ALJ did not properly evaluate witness testimony; (3) "The ALJ did not evaluate medical opinion evidence according to the criteria utilized by the source of that medical opinion"; and (4) the ALJ's hypothetical question for the Vocational Expert was "defective in two respects: first, because it contained a hopelessly vague, undefined term ("some difficulty") describing the degree of limitation in functional domains that left to the VE the responsibility for interpreting that tern; and second, because it did not include all of [Plaintiff's] functional limitations."[3] Docket No. 15. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed and remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

---

[3] While Plaintiff titles this statement of error as "The ALJ's finding that Ms. Stevenson could perform past work is not supported by substantial evidence" (Docket No. 15 at 15), the substance of her argument focuses on the hypothetical question posed to the Vocational Expert, and the Court will analyze it in that manner.

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

**1. "Inconsistency" Between the ALJ's Physical Impairment Severity Findings and his Discussion of Those Impairments**

Plaintiff argues that the ALJ's decision "reflects a significant inconsistency between the ALJ's finding as to the severity of [Plaintiff's] physical impairments and his discussion of those same impairments." Docket No. 15 at 11. Specifically, Plaintiff contends that the ALJ found her asthma and chronic obstructive pulmonary disease to be severe physical impairments, yet he subsequently stated that her asthma/chronic obstructive pulmonary disease ("COPD") were considered to be non-severe impairments. *Id.*, *citing* TR 18, 20. Plaintiff argues that, while the ALJ did find, as a "preventive measure," that Plaintiff should avoid concentrated exposure to airborne irritants and/or poor ventilation, an avoidance of concentrated exposure to airborne irritants and/or poor ventilation is not among the physical functions required to do basic work activities such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling. *Id.* at 11-12, *citing* TR 20. Plaintiff also contends that the ALJ's finding that she had no limitations in performing physical work activities is inconsistent with his finding that her respiratory impairments constitute severe impairments. *Id.* at 12, *citing* TR 18. Plaintiff argues

8

that these inconsistencies deprive the Court of meaningful review, such that this action should be remanded for a new hearing. *Id.*

Defendant responds that the ALJ's findings at issue were made at two different steps in the sequential evaluation, each of which took different factors into account in reaching the decision at that step. Docket No. 16 at 7-8. Specifically, Defendant notes that step two of the sequential evaluation does not take into account the duration or frequency of an impairment. *Id.*, *citing* 20 CFR §404.1520; 20 CFR §404.15211; 20 CFR §416.920; 20 CFR §416.921. Defendant maintains that the later determination of a claimant's RFC requires consideration of those factors. *Id.* Defendant argues that the ALJ's step two finding that Plaintiff's asthma / COPD were severe impairments (TR 18) properly considered the work-related limitations caused by those impairments, but not their duration, while his subsequent finding that, in the context of her overall RFC, those impairments were not severe (TR 20), properly accounted for durational considerations. *Id.* at 8. Defendant also asserts that the ALJ properly explained his rationale, including his consideration of whether Plaintiff's breathing problems, limitations, exacerbations, treatment, and hospitalizations/ER visits were chronic, ongoing, or frequent. *Id.* Defendant argues that the ALJ fully considered Plaintiff's asthma / COPD and their impact on her RFC, such that perceived inconsistency between the ALJ's findings at the two different steps of the sequential evaluation process would be irrelevant. *Id.*

At step two of the sequential evaluation, the ALJ found, "The claimant has the following severe impairments: asthma, chronic obstructive pulmonary disease (COPD), status post colon cancer, anxiety and affective mood disorder (20 CFR 404.1520(c) and 416.920(c))." TR 18. Later, when evaluating the medical and testimonial evidence to determine Plaintiff's RFC, the

ALJ discussed Plaintiff's asthma / COPD as follows:

> The claimant testified she had asthma with difficulty breathing. The medical evidence supports testimony regarding her having asthma. However, the medical evidence does not indicate chronic or frequent breathing problems, or frequent asthma exacerbations. The medical records shows that in 2008, she had acute bronchitis (Exhibit 2F) when smoking one-pack cigarettes per day (ppd). (Exhibit 3F) In December 2008, she was using Albuterol inhaler. In March 2009, she reported a reduction in her smoking from 1 ppd to ½ ppd. Despite smoking, multiple lung examinations revealed unlabored respiration and lungs clear to auscultation. In July 2010, three days after a colostomy for an obstructing colon mass (cancer), she was hospitalized with COPD exacerbation and respiratory insufficiency secondary to pneumonia. After 4 to 5 days, a second chest x-ray was normal. Her symptoms resolved with oxygen, antibiotics, bronchodilators, hydration and hydrocortisone, and she was discharged. In July 2010, her smoking had increased to 1 ½ packs per day. (Exhibits 10F, 14F, 15F) The medical evidence indicates there is minimal, if any, chest x-ray evidence to document chronic severe pulmonary disease and no physician evidently believed pulmonary function studies were necessary. Several treating source lung examinations show no pulmonary/lung abnormalities. The medical record reveals she has had infrequent shortness of breath (SOB). On one occasion, she complained of SOB of two weeks, which was easily resolved. Additionally, there is minimal objective evidence to show she has suffered ongoing limitations due to SOB or asthmatic symptoms. In addition, there are no medical records documenting any frequent hospitalizations or emergency room (ER) visits due to lung/pulmonary/breathing problems. An overview indicates that a preponderance of the objective evidence indicates she has no chronic pulmonary impairment, which has more than minimally impacted upon her ability to perform basic work-related activities. Therefore, her intermittent respiratory symptoms are determined to be unrepresentative of an ongoing severe pulmonary impairment. Apparently, her asthma is well controlled with medication. She has continued to smoke and no physician has repeatedly stressed the importance of smoking cessation. For all these reasons, asthma/COPD is considered a "non-severe" impairment. However, as a preventative measure for an individual with these conditions, avoidance of concentrated exposure to airborne irritants and/or poor ventilation is added to the RFC.

TR 20, *citing* TR 325-37, 338-418, 569-81, 631-33, 645-99.

As can be seen, the ALJ considered the objective and testimonial evidence of record concerning the effects, frequency, and duration of, and treatment for, Plaintiff's breathing impairments, and explained his rationale for finding her asthma / COPD to be "non-severe" for purposes of her RFC. *Id.* Recognizing that she does, in fact, have asthma / COPD, however, the ALJ, "as a preventative measure," made part of Plaintiff's RFC a requisite avoidance of concentrated exposure to airborne irritants and/or poor ventilation. *Id.*

Contrary to Plaintiff's assertion, the ALJ's findings are not contradictory. They were made at two different steps during the sequential evaluation process, under different standards, considering different factors. The ALJ's finding of severe impairments at step two of the sequential evaluation is, in essence, a threshold requirement that determines whether the claim is denied at that point, or whether the evidence is evaluated further throughout the completion of the sequential evaluation. Here, the ALJ found that Plaintiff did, in fact, have severe impairments and he went on to complete the sequential evaluation process. That determination was proper, as was the ALJ's evaluation of the medical and testimonial evidence of record, including that regarding the effects, frequency, and duration of, and treatment for, Plaintiff's asthma / COPD. Plaintiff's argument on this point fails.

**2. Consideration of Witness Testimony**

Plaintiff contends that the ALJ "employed inappropriate criteria in evaluating witness testimony" and therefore erroneously rejected testimony from her fiancé, Randy Casteel. Docket No. 15 at 12. Specifically, Plaintiff argues that, of the ALJ's three stated reasons for rejecting Mr. Casteel's testimony, "the first two [of those] reasons are inappropriate considerations in

evaluating lay witness testimony and the third is simply not true." *Id.* Plaintiff first asserts that Mr. Casteel's testimony was offered for the purpose of documenting her symptoms and functional limitations, not for the purpose of establishing the existence of a medically determinable impairment or medical opinion, so the fact that he was not medically trained is irrelevant to his recitation of his personal observations of her symptoms and functional limitations. *Id.* at 12-13. Plaintiff contends that the Regulations require consideration of all testimony, including that made by other people offered to provide insight into how the alleged symptoms affect the claimant's activities of daily living and ability to work. *Id.* Plaintiff next asserts that the ALJ's consideration of the fact that Mr. Casteel was not a disinterested third-party witness "is equally inappropriate," because, had Mr. Casteel been a disinterested third-party witness, he would not have had an ongoing opportunity to observe Plaintiff's symptoms and functional limitations. *Id.* Plaintiff asserts that the Regulations do not provide for the ignoring of witness testimony "simply by virtue of a witnesses' relationship to the party alleging disability." *Id.* Finally, Plaintiff states that the ALJ's conclusion that Mr. Casteel's testimony is inconsistent with the opinions and observations by physicians, psychologists, counselors, and other providers, is "simply not true." *Id.* at 12. Plaintiff summarizes, "Mr. Casteel was in a unique position to observe [Plaintiff] over a long period and the ALJ's failure to give appropriate consideration to his testimony or evaluate it according to appropriate criteria" constitutes reversible error. *Id.* at 13.

Defendant responds that the ALJ provided valid reasons for determining that Mr. Casteel's testimony was not fully credible and that those reasons are supported by substantial evidence. Docket No. 16 at 9. Specifically, Defendant maintains that it was proper under 20

CFR §404.1529(c)(1), 20 CFR §416.929(c)(1), and SSR 96-7p, for the ALJ to consider all of the objective and testimonial evidence of record and make a credibility determination regarding Mr. Casteel's statements. *Id.* at 9-10. Defendant contends that the ALJ properly considered the evidence of record when he determined that Mr. Casteel was not entirely credible because he had no medical training and he was not a disinterested witness. *Id.*, *citing* TR 19-20. In response to Plaintiff's contention that Mr. Casteel's testimony was "fully supported by the evidence," Defendant argues that Plaintiff "cites barely a handful of pages in the 699-page record" to support her contention, while the ALJ cited substantial evidence in support of his conclusion. *Id.*, *citing* Docket No. 15 at 12-13, TR 19-20. Defendant asserts that Plaintiff "essentially asks the Court to reweigh the evidence of record, and to give more or less weight to some evidence than the ALJ did," which is "foreclosed by the applicable standard of review." *Id.* Defendant reiterates that the ALJ was correct in dismissing Mr. Casteel's testimony because it was inconsistent with the record evidence. *Id.*

The ALJ discussed Mr. Casteel's testimony as follows:

> The claimant's fiancé, Randy Casteel, testified as a witness at the hearing. Mr. Casteel testified he and the claimant had been living together for five years as of June 23, 2010. He testified that without medication, she had tried to kill him; however, as long as she took her medications, she was never violent. He testified that as long as she took her medication she was semi-functional, calm, harmless, able to carry out her "routine;" that he gave her medications before he left the house; and that she watched television all day. He testified that in the past, she could be violent with others and had difficulty getting along with others. He testified a friend got her the job at City Café and she worked there a couple of years part time (10 am to 2 pm), that she was let go because she could not get along with the other employees and could not perform her job. He testified the City Café might have closed more than a year after she was let go. He testified that after

13

being fired, she was very nervous and shaking.  He testified that if she skipped her morning medications, he knew it as soon as he walked in the door because of her attitude and mood.  He testified she used to drink too much years ago, but now only drank 2 to 3 beers per week, but only if he was drinking.  He testified they did not go out places, she never drove, she did not have a license, he did the grocery shopping, she might go see her uncle and aunt, and her sister, but he would drive her.  He testified that otherwise, she only went to the mental health appointments.  He testified that she could not read and write, her aunt helped her with paperwork, she could only sign her name, she kept her 6-year old grandson every weekend, and she could not help him with his first grade reader.  He testified that they do not visit others, she will not go visiting except for the relatives mentioned, and that she would ride with him to the store, but stayed in the truck.  Mr. Casteel's testimony does not establish that the claimant is disabled.  Since he is not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of the testimony is questionable.  Moreover, by virtue of the relationship as a long time boyfriend of the claimant, Mr. Casteel cannot be considered a disinterested third party witness whose testimony would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges.  Most importantly, significant weight cannot be given to the witness' testimony because it, like the claimant's, is simply not consistent with the preponderance of the opinions and observations by physicians, psychologists, counselors and other providers in this case.  However, his testimony did confirm that she had some difficulty interacting with the general public and that she did much better when she took medications as prescribed.

TR 19-20.

As can be seen, the ALJ recounted Mr. Casteel's testimony, demonstrating that he did, in fact, consider it.  As can also be seen, the ALJ explained his reasoning for not finding it entirely credible and for not according it significant weight.  The ALJ, in his decision, also discussed Plaintiff's testimony and the medical evidence of record.  *See* TR 20-26.  The ALJ's finding that

Mr. Casteel's testimony was "simply not consistent with the preponderance of the opinions and observations by physicians, psychologists, counselors and other providers in this case" was supported by the remainder of the ALJ's decision. Contrary to Plaintiff's assertions, the ALJ's evaluation of Mr. Casteel's testimony and weighing of his credibility was proper, and his determinations that Mr. Casteel's testimony was not fully credible and could not be accorded significant weight were supported by substantial evidence.

As has been noted, the reviewing court does not substitute its findings for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner*, 745 F.2d at 387. In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key*, 109 F.3d at 273). As discussed above, the ALJ's decision was properly supported by "substantial evidence." The ALJ's decision, therefore, must stand.

### 3. The ALJ's Evaluation of Plaintiff's Clinically Related Group ("CRG") Forms

Plaintiff contends that the ALJ's determination that her mental health care provider's report that she had mild-to-moderate limitations in all four areas of mental functioning was consistent with the state agency opinions, was erroneous because "moderate" as used on a CRG form does not mean the same thing as "moderate" on a Psychological Review Technique Form ("PRTF"), so the findings on the two forms are not necessarily consistent with each other. Docket No. 15 at 13-15. Plaintiff argues that the "CRG manual provides detailed instructions and tangible examples for completing each of the four functional domains described in the CRG forms," but the terms found on a PRTF form ("none, mild, moderate, marked, and extreme") are

"undefined and contain no examples reflecting the applicable degree of limitation." *Id.* Plaintiff also argues that the Regulations likewise "do not define the terms or provide examples reflecting the applicable degree of limitation." *Id.* Because the meaning of the terms on the CRG and PRTF forms may differ, Plaintiff contends that the ALJ's finding that they were consistent with each other was erroneous, such that the ALJ inappropriately assessed the opinion of Plaintiff's mental health provider. *Id.*

Defendant first responds that Plaintiff "has failed to meet her burden of proof" because she "has not shown that [Volunteer Behavioral Health Care System] uses the word 'moderate' differently than the ALJ did," but rather, "merely suggests that they *might* have used the term differently than he did." Docket No. 16, at 11 (emphasis original). Defendant further responds that Plaintiff has misconstrued the ALJ's decision because the ALJ did not simply adopt the CRG form's findings, but in fact, considered the CRG forms as one part of the record during his overall review of the evidence of record. *Id.* at 11-12. Defendant contends that the CRG forms were "one source of evidence among many" that showed that Plaintiff had only mild or moderate limitations in mental functioning. *Id.* at 12. Accordingly, Defendant argues that the ALJ's decision was proper. *Id.*, *passim*.

The ALJ discussed the evidence relating to Plaintiff's limitations in all four areas of mental functioning as follows:

> Regarding activities of daily living (ADL's), in 2008, she enjoyed movies, television, music, dancing and outdoor activities. She also was able to keep her 4-year old [*sic*] grandson "every weekend." Housework included cleaning out closets and rearranging the furniture. In 2009, she reported she stayed busy taking care of her grandchildren. She said she "occasionally" cooked or did small amounts of housework. She washed dishes and laundry, but would

finish much later in the day. She said she ironed, but at her own pace; she said she needed 15 to 20 minutes to rest before continuing a task or activity. She said she cooking [sic] one meal a day, usually meat and vegetables. She had no problem caring for her own personal needs. She lived with her boyfriend and did her own ADL's." (Exhibits 4E, 5E, 10E, 3F, 4F, p 93; 8F, p 17; 13F, p 18) At the hearing, she testified she did not have driver's license, did not drive, did not visit and did not shop. She testified she messed around the house, washed laundry, watched television, did not like to leave the house, and only left home to go to medical appointments. Treating sources report "mild" limitation in this area in April 2009 and March 2010. (Exhibit 13F) Two state agency psychologists report "moderate" limitation in this area. (Exhibits 6F, 11F) Giving the claimant the benefit of any doubt, "moderate" limitation is credited in this area.

Regarding social functioning, on April 7, 2008, the claimant was "actually smiling..." She had been abstinent from alcohol for a while. (Exhibit 13F, p 18) The medical evidence documents a long-term relationship with her current boyfriend who is very supportive. At the hearing, testimony indicated she visited her uncle, aunt and sister. Treating sources report "mild" and "moderate" limitation in this area in April 2009 and March 2010, respectively. (Exhibit 13F) Two state agency psychologists report "moderate" limitation in this area. (Exhibits 5F, 6F, 11F) Based upon a preponderance of the evidence, and giving the claimant the benefit of any doubt, "moderate" limitation is credited in this area.

Regarding concentration, persistence or pace, in May, August and September 2008, mental health treatment records indicate her concentration was unimpaired, mildly impaired and moderately impaired, respectively. In October and December 2008, concentration was unimpaired and her mood mildly depressed with mild anxious [*sic*]. In January, February, April, June September and December 2009, concentration was unimpaired. In 2010, concentration was unimpaired. (Exhibits 3F, 4F, 8F, 13F) Treating sources report "moderate" limitation in this area in April 2009 and March 2010. (Exhibit 13F) Two state agency psychologists report "moderate" limitation in this area. (Exhibits 5F, 6F, 11F) Based upon a preponderance of the evidence, "moderate" limitation is credited in this area.

. . .

The medical opinions by state agency psychologists reflect the claimant has moderate limitations in the areas of maintaining social functioning and concentration, persistence or pace. (Exhibits 5F, 6F, 11F) These assessments are somewhat supported by clinical findings and psychological diagnostic techniques, (when the benefit of doubt is given to the claimant) and are fairly consistent with other substantial evidence, such as evidence of a mild to moderate reduction in her ability to perform ADL's. Therefore, these state agency opinions are entitled to substantial weight. (20 CFR 404.1527(d)(3), (d)(4) and (d)(6)) It is noted the state agency psychologist's opinion prepared on February 2, 2007 (Exhibit 5F), indicated an inability to interact appropriately with the public; an opinion which is supported by the claimant's repeated subjective complaints and is added to the RFC.

The Clinically Related Group (CRG) forms by the mental health provider (PMHC) indicate mild to moderate limitations in all four areas of mental functioning. (Exhibit 13F) In this context, these CRG ratings are consistent with the state agency opinions at Exhibits 5F, 6F and 11F. However, the PMHC's assessed GAF scores indicate a degree of severity and limitation, which is not consistent with their own treatment records. For example, PMHC treatment records demonstrate that when the claimant is compliant with medications and treatment appointments, her mental functioning is considerably higher than the GAF scores of 39 to 50, which they assessed initially. However, these scores appear to have been merely duplicated throughout the treatment records. Even when the claimant's symptoms showed considerable improvement, the GAF scores remained the same. In addition, their treatment records who psychotropic medications, after a period of adjustment, were able to improve, diminish and eventually stop her auditory hallucinations. Nevertheless, month after month, PMHC continued to report she had MDD, severe with psychotic features; a diagnosis which is not consistent with the clinical findings in their own treatment records. Therefore, due to these inconsistencies, the PMHC GAF scores and their diagnosis regarding severe MDD with psychotic features, over a 12-month continuous basis, are both determined to be unsupported by clinical findings and psychological diagnostic techniques, and are not consistent with other substantial evidence, including her ability to perform her own ADL's. Thus, PMHC's GAF scores and severity of their diagnoses, are not well supported by a preponderance of the evidence and therefore, are entitled to less weight.

TR 22, 25-26, *citing* TR 243-50, 251-52, 276-83, 338-418, 419-519, 520-23, 524-37, 538-41, 542-58, 582, 583-91, 592-630.

The ALJ also noted, with regard to Plaintiff's mental limitations, that:

> The record contains no hospital records to indicate any psychiatric
> inpatient hospitalizations since the AOD. Additionally, she has
> received mental treatment by medical physicians at the health
> department. No evidence can be found indicating any treating
> physician referred her for mental health treatment. Moreover, her
> activities of daily living do not indicate she has had any marked
> ongoing mental limitations and mental symptom exacerbations are
> frequently connected to lack of treatment or noncompliance with
> prescribed medications. It is rational to conclude, if the claimant
> were as mentally impaired as alleged, she would have sought help
> from mental health professionals for the 14 months from March
> 2007 to May 2008, when she finally returned to Plateau Mental
> Health Center. Significantly, she was discharged from Plateau in
> March 2007, due to her failure to show for scheduled treatment
> appointments.

TR 23.

Ultimately, the ALJ concluded:

> For all the reasons discussed above, it is determined substantial
> medically acceptable clinical findings; radiographic, laboratory and
> psychological diagnostic techniques; physician, psychologist,
> psychiatrist, counselor, nurse practitioner, etc., opinions; and daily
> activities of living are consistent with the RFC, and the subjective
> complaints have been accepted, as far as they are supported by the
> objective evidence and medical opinions.

TR 26.

Plaintiff's argument that this action should be reversed or remanded because the ALJ

inappropriately assessed the opinion of her mental health providers because the meaning of the

terms on the CRG and PRTF forms might differ is unavailing. As can be seen, the ALJ did not

base his decision solely on the terms or opinions noted on the CRG or PRTF forms or their

reported consistency with each other, but rather, based his decision on the entirety of the evidence of record. After considering the evidence in its entirety, the ALJ reached a reasoned decision based on that evidence, and articulated the basis for his decision. The ALJ's decision, therefore, stands.

**4.  The ALJ's Questioning of the Vocational Expert ("VE")**

Plaintiff contends that the ALJ's hypothetical question posed to the VE "was defective in two respects: first, because it contained a hopelessly vague, undefined term ("some difficulty") describing the degree of limitation in functional domains that left to the VE the responsibility for interpreting that term; and second, because it did not include all of [her] functional limitations." Docket No. 15 at 15-16, *citing* TR 53-54. Plaintiff further contends that the ALJ "interpreted the term 'some difficulty' as meaning no difficulty in performing essential job functions," but did not ask the VE to "assume an individual with no exertional limitations and no difficulty in maintaining attention, concentration, persistence and pace, being around others, and adapting to change in the work environment." *Id.*, *citing* TR 54. Plaintiff contends that, instead, the ALJ asked the VE to assume "some difficulty" in these mental domains, but never defined the degree of limitation, resulting in the VE's assumption of "no limitation." *Id.* Plaintiff also argues that the ALJ's hypothetical question did not incorporate all of Plaintiff's functional limitations, "particularly those reflected in the CRG forms completed by [her] mental health provider." *Id.* Plaintiff asserts that the aforementioned issues caused the ALJ's hypothetical question to be flawed, such that the ALJ is precluded from relying upon the VE's answer to the hypothetical. *Id.* Plaintiff contends that the VE's response to the ALJ's hypothetical question cannot support the ALJ's findings, and that the ALJ's finding that she could perform her past work was erroneous.

*Id.*

Defendant responds that Plaintiff has cited no authority for the proposition that an ALJ may not use the word "some" to describe a claimant's degree of impairment in an area of functioning. Docket No. 16 at 12. Defendant cites numerous cases supporting the proposition that an ALJ may, in fact, use the word "some" to characterize a degree of impairment. *Id.*, *citing*, *e.g., Ranellucci v. Astrue*, No. 3:11-CV-000640, 2012 WL 4484922, at *1 (M.D. Tenn. Sept. 27, 2012); *Davis v. Astrue*, No. 3:11-CV-109, 2012 WL 2064498, at *1 (E.D. Tenn. May 14, 2012); *Engle v. Astrue*, No. 11-18-GWU, 2012 WL 693564, at *4 (E.D. Ky. Mar. 1, 2012). Defendant argues that Plaintiff's argument is "contradicted by case law and industry usage," and that the ALJ's hypothetical question sufficiently and properly described Plaintiff's limitations. Defendant further contests Plaintiff's conclusion that the VE interpreted "some difficulty" to mean "no limitation." Docket No. 16 at 13. Defendant argues that the VE never stated that he interpreted "some difficulty" to mean "no limitation," but rather, testified that he interpreted the term "some difficulty," as used in the ALJ's hypothetical question, to not preclude the performance of essential job functions. *Id.* at 13-14. Finally, Defendant argues that for the reasons discussed above in the third statement of error, Plaintiff's argument that the ALJ's hypothetical question was deficient because it did not include the functional limitations specified in VBHCS's CRG forms fails. *Id.* at 14.

With regard to the ALJ's hypotheticals posed to the VE, the ALJ queried:

> Q    Now, what I would like for you to do is to assume a
>        hypothetical candidate for employment, same age,
>        education and work experience as Ms. Stevenson.
>
> A    Okay.

Q       This individual will have no exertional limitations. There would be no job requiring reading and writing. The individual should avoid exposure to dusts, fumes, gases, odors, and poor ventilation. The individual would be able to maintain and would be able to understand and remember simple and detailed tasks, would be able, with some difficulty, to maintain attention, concentration, persistence and pace and be around others without distraction –

A       You said?

Q       With some difficulty.

A       Okay.

Q       Unable to interact appropriately wit the general public, would be able, with some difficulty, to adapt to change in the work environment. Do you have those limitations in mind?

A       Yes.

Q       What about past work?

A       I believe that based on your hypothetical, she would be able to perform past relevant work.

Q       Okay. Now, let me ask you to assume the same hypothetical candidate?

A       Yes.

Q       This individual would be unable to leave the house unaccompanied, would be unable to interact appropriately with coworkers, supervisors and the general public, past work available?

A       No sir.

TR 53-54.

In response, Plaintiff's counsel engaged in the following exchange with the VE:

Q        Mr. Roman, let me ask you about your interpretation of the limitation "some difficulty." I don't know what that meant, do you know what that meant?

A        Well, I would translate it to that, will have some difficulty, but it's not precluded. That's what I understood it as being.

Q        Okay, so some difficulty really is no limitation at all in terms of one's ability to perform the essential job functions?

A        Well, if the person can perform the simple repetitive job, then it's not precluded.

Q        Okay. So, in terms of a functional limitation described in the first hypothetical --

A        Yes sir.

Q        The term "some difficulty" impose [sic] no additional limitation in that it did not preclude essential job functions?

A        That's how I believe it to mean.

Q        Okay. That's how you interpret it?

A        Yes.

TR 55.

As an initial matter, Plaintiff's argument that the ALJ's use of the phrase "some difficulty" constitutes reversible error or somehow fails to sufficiently describe the degree of Plaintiff's impairment is in direct contradiction to case law and industry usage, and Plaintiff has cited no authority in support of her assertion. Moreover, as can be seen in the quoted passage above, contrary to Plaintiff's assertion, the VE did not testify to interpreting "some difficulty" to mean "no limitation." Rather, the VE testified that "some difficulty" would mean that the ability to perform the essential job functions would not be precluded. The two simply do not equate.

Additionally, although Plaintiff contends that the ALJ's hypothetical question did not incorporate all of her functional limitations, "particularly those reflected in the CRG forms completed by [her] mental health provider," and that the ALJ failed to ask the VE to assume an individual with no exertional limitations and no difficulty in maintaining attention, concentration, persistence and pace, being around others, and adapting to change in the work environment, the undersigned has already discussed the ALJ's consideration of Plaintiff's CRG forms, and, as can be seen in the quoted passages above, however, the ALJ specifically included these limitations in his hypothetical question posed to the VE. Accordingly, Plaintiff's argument fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Hearing be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge